IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                       NO. 17-CR-00370 JCH

IMAD AYSHEH, aka: "IMAD MANASSRA",
IYAD AYSHEH, NEDAL AYSHEH and RAED AYSHEH,

        Defendants.

## DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29

COME NOW Defendants, by and through their respective counsel of record, and hereby reply to the government's response to their joint motion for judgment of acquittal. ECF 486. For the reasons stated in their motion, during oral argument on May 8, 2024, and this reply, all four defendants are entitled to a judgment of acquittal pursuant to Fed. R. Crim. P. 29.

While acknowledging the Court's questions about the evidence (or lack thereof) of a conspiratorial agreement, the government points to no facts in its response that would support that element. This is because it adduced none. Instead, the government cites to a series of cases in which defendants engaged in patently illegal conduct with others and then challenged their convictions for conspiring to engage in that conduct on a variety of grounds, arguing that an agreement can be inferred from such conduct. *See Telman v. United States*, 67 F.2d 716, 717 (10th Cir. 1933) (evidence sufficient to infer conspiratorial

agreement where defendant operated multiple establishments that sold whisky in violation of the National Prohibition Act, employed others to work at those establishments, and financially supported a producer who supplied the defendant with whisky); *Iannelli v. United States*, 420 U.S. 770 (1975) (holding a defendant could be convicted of conspiracy to violate a gambling statute and of the substantive offense of violating it); *United States v. Evans*, 970 F.2d 663 (10th Cir. 1992) (upholding convictions for conspiracy to distribute, and to possess with intent to distribute, crack cocaine). However, this case is readily distinguishable from the ones the government cites. In this case, the government failed to introduce any evidence that Imad, Iyad, or Nedal Aysheh engaged in illegal conduct. Instead, it seeks to convict these defendants based on lawful activity purportedly conducted for an unlawful purpose.

The government also cites to *Direct Sales Co. v. United States*, 319 U.S. 703 (1943) for the proposition that "'[p]rolonged cooperation' with someone else's 'unlawful purpose' by supplying that person with 'his stock in trade for his illegal enterprise' is also evidence of a conspiratorial agreement." ECF 486 at 2-3. Under *Direct Sales Co.*, however, "one does not become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally." *Id*. at 709, *citing United States v. Falcone*, 311 U.S. 205 (1940). This is especially true in a case such as this one where the thing being sold is not a restricted commodity, "incapable of further legal use except by compliance with rigid regulations, such as apply to morphine sulphate." 319 U.S. at 710.

> The difference is like that between toy pistols or hunting rifles and machine guns. All articles of commerce may be put to illegal ends. But all do not have inherently the same susceptibility to harmful and illegal use. Nor, by the same token, do all embody the same capacity, from their very nature, for giving the seller notice the buyer will use them unlawfully. Gangsters, not hunters or small boys, comprise the normal private market for machine guns. So drug addicts furnish the normal outlet for morphine which gets outside the restricted channels of legitimate trade.
>
> This difference is important for two purposes. One is for making certain that the seller knows the buyer's intended illegal use. The other is to show that by the sale he intends to further, promote and cooperate in it. This intent, when given effect by overt act, is the gist of conspiracy. While it is not identical with mere knowledge that another purposes unlawful action, it is not unrelated to such knowledge. Without the knowledge, the intent cannot exist. … Furthermore, **to establish the intent, the evidence of knowledge must be clear, not equivocal. … This, because charges of conspiracy are not to be made out by piling inference upon inference** …

*Id*. at 710-711 (emphasis added); *see also id.* at 713 (intent and agreement can be inferred from knowledge only when "[t]here is more than suspicion, more than knowledge, acquiescence, carelessness, indifference, lack of concern. There is informed and interested cooperation, stimulation, instigation. And there is also a 'stake in the venture' which, even if it may not be essential, is not irrelevant to the question of conspiracy. … In such a posture the case does not fall doubtfully outside either the shadowy border between lawful co-operation and criminal association or the no less elusive line which separates conspiracy from overlapping forms of criminal cooperation.").

To prove an agreement to import the IJ jewelry in violation of law, the government was required to introduce evidence that the defendants knew they were required to indelibly mark the jewelry with the word "Philippines" and agreed not to do so. It introduced no such evidence as to any of the four defendants. Moreover, during oral arguments on the Defendants' motion for judgment of acquittal, the government could not articulate a single

fact—other than the lack of marking itself—from which a jury could reasonably infer such knowledge. Instead, the government speculated, without the benefit of any supporting witness testimony, that the lack of marking benefited the Defendants and thus they must have known they had a duty to include the country of origin marking. With respect to the charge of conspiracy to violate the Indian Arts and Crafts Act, the only Defendant for whom the government presented evidence of a misrepresentation was Raed Aysheh. Yet the government presented no evidence of an agreement to misrepresent the jewelry. As articulated by counsel for Raed Aysheh at the hearing, no evidence was ever presented that anyone, whether charged or not, ever told, asked, or agreed with Raed regarding how to promote, describe, advertise, display, respond to questions, or otherwise how to represent the origin or make of the imported jewelry. A reasonable juror therefore has nothing from which to infer an agreement without rank speculation not based on any evidence presented at this trial.

Moreover, the conduct of other retailers (i.e., the decisions of some of those respective retailers to make misleading misrepresentations about IJ jewelry items) is, at best, evidence that those retailers violated the Indian Arts and Crafts Act. It is not evidence that any of the Defendants conspired with them.

WHEREFORE, the Defendants move for judgment of acquittal with reference to all Defendants.

//

//

Respectfully submitted,

/s/ Theresa M. Duncan
Theresa M. Duncan
Law Office of Theresa M. Duncan LLC
P.O. Box 2769
Santa Fe, NM 87504
(505) 710-6586

*Counsel for Defendant Imad Aysheh*

/s/ Monnica L. Barreras
Monnica L. Barreras
Law Office of Monnica L. Barreras, LLC
P.O. Box 27158
Albuquerque, NM 87125
(505) 242-3919
monnica@barreraslaw.com

*Counsel for Defendant Iyad Aysheh*

/s/Marshall J. Ray
Marshall J. Ray
Law Office of Marshall J. Ray, LLC
514 Marble Ave NW
Albuquerque, New Mexico 87102
(801) 369-0731

*Counsel for Defendant Nedal Aysheh*

/s/Gregory M. Acton
Gregory M. Acton
Acton Law Office PC
6900 Riverside Plaza Ln. NW, Suite 100
Albuquerque, NM 87120
(505) 338-0453

*Counsel for Defendant Raed Aysheh*

**CERTIFICATE OF SERVICE**

I certify that on May 10, 2024, I filed the foregoing document electronically through the CM/ECF system, which caused all counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Theresa M. Duncan*
Theresa M. Duncan